| | |
|---|---|
| GLORIANNA LAGNESE; REBOUND HOUNDS RES-Q INC., DONALD J. ANDERSON, JR.; individually and on behalf of all other persons similarly situated, | 3:15-CV-00975-AWT |
| | CLASS ACTION |
| Plaintiffs, | JURY DEMAND |
| v. | |
| CITY OF WATERBURY; TOWN OF MANCHESTER; TOWN OF SOUTHINGTON; individually and on behalf of all 169 municipalities in the State of Connecticut. | |
| Defendants. | NOVEMBER 14, 2016 |

## SECOND AMENDED CLASS ACTION COMPLAINT

COME NOW, plaintiffs Glorianna Lagnese, Rebound Hounds Res-Q Inc. and Donald J. Anderson, Jr., individually and on behalf of all other persons similarly situated, in the above-titled action and file their Second Amended Class Action Complaint against defendants the City of Waterbury, the Town of Manchester and the Town of Southington, individually and on behalf of all one hundred sixty-nine (169) similarly situated municipalities in the State of Connecticut.

It has been said that "individual freedom finds tangible expression in property rights."[1]  The defendants, working in concert, have disregarded this venerable principle by seizing, keeping, and often destroying the private property of others (in this case dogs) without providing the constitutionally required hearings. This they

---

[1] *United States v. James Daniel Good Real Property, 510 U.S. 43, 61 (1993).*

cannot do.

## I.    INTRODUCTION

1.  This is a bilateral class action, arising under 42 U.S.C. § 1983, seeking declaratory and injunctive relief related to the seizure and long-term impoundment of plaintiffs' dogs, in violation of plaintiffs' rights to due process and to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

2.  Each of the named plaintiffs' dogs and the dogs of each of the members of the putative plaintiff class were or will be seized and held without any process by a Connecticut municipality incident to their enforcement of CGS § 22–358(c). The respective municipality issued a restraint or disposal order on the dog, and the named plaintiff class representatives timely appealed such order to the Connecticut Department of Agriculture pursuant to Conn. Gen. Stat. § 22–358(c). Plaintiffs' dogs are (or will be) impounded and held by the municipality pending resolution of the administrative appeal of the restraint or disposal order.

3.  In each instance, the owners' dogs have been seized and retained by the defendant town, and the owners are at risk of having their dogs killed without a prompt post-seizure, pre-judgment hearing or other opportunity to challenge the basis for such seizure and retention.

4.  During the pendency of the appeals, the dogs are held at municipal pounds while their owners are deprived access to, possession of and the use and companionship of their dogs, as well as denied the ability to monitor and ascertain whether their dogs are receiving necessary care and exercise while not being

exposed to disease. During this time, the dogs are held in solitary confinement in a small cage virtually 24 hours a day, 7 days a week without adequate exercise, human interaction and contact, and are allowed to debilitate throughout the months to year-long wait to obtain a hearing before the Connecticut Department of Agriculture.

5. Conn. Gen. Stat. § 22-358(c) is unconstitutional on its face and as applied because there is a complete lack of rules, regulations, guidelines, standards or procedures for the interpretation or enforcement the statute. The statutory scheme thus fails to inform dog owners, in a uniform manner, what behavior is prohibited under the statute, and fails to provide any basis for determining whether a violation of the statute has occurred, and to what extent any enforcement action should be taken, if any. This violates plaintiffs' rights pursuant to the due process and equal protection clauses of the US Constitution.

6. Conn. Gen. Stat. § 22-358(c) is also unconstitutionally vague because it fails to provide adequate notice to ordinary persons of what conduct is prohibited by the statute, thereby violating the Fourth and Fourteenth Amendments to the United States Constitution. Furthermore, Conn. Gen. Stat. § 22-358(c) is unconstitutionally vague because it fails to provide any guidelines or standards for its enforcement, thereby leading to arbitrary and discriminatory enforcement at the discretion of animal control and law enforcement officials.

7. As a result thereof, plaintiffs have been placed in fear of walking their dogs in public areas, as well as seeking the protection and assistance of members of the police or other employees of the defendants while with their dogs, lest their dogs

be seized.

8. By reason of the fear and apprehension of having their dogs seized and retained
by the defendant municipalities incident to the enforcement of Conn. Gen. Stat. §
22-358(c), plaintiffs have been and continue to be deprived of their rights under
the Fourth and Fourteenth Amendments to the United States Constitution, and
deprived of the protections to which they are entitled from police and other
employees of the defendants, as citizens, residents or visitors to the State of
Connecticut.

9. While Conn. Gen Stat. §4-167 (Uniform Administrative Procedures Act) requires
the Commissioner of Agriculture to promulgate rules and regulations concerning
the enforcement of CGS §22-358(c), he has not done so.  Accordingly, plaintiffs
seek a declaratory judgment that Conn. Gen. Stat. § 22-358(c)  is unconstitutional
as applied by the towns by vesting unfettered discretion in their animal control
officers (ACOs) without providing them with adequate guidelines and standards,
and by failing to provide a prompt post-seizure, pre-judgment hearing before a
neutral judicial or administrative officer to determine whether the municipalities (i)
had probable cause to believe the dogs committed an act in violation of the
statute; (ii) had probable cause to effectuate warrantless entries upon plaintiffs'
properties and warrantless seizures of their dogs under the Fourth Amendment of
the United States Constitution; (iii) had probable cause to believe a "14 day rabies
hold" was necessary, required or authorized, and (iv) whether means short of
retention of the dogs can satisfy the municipalities' need to preserve the dogs
during the pendency of proceedings.

10. Since dogs are considered property and effects, owners are therefore afforded Fourth Amendment protections when the municipal defendants, in enforcing CGS §22-358(c), seize their dogs without a warrant and continue to hold them beyond the statutory fourteen-day rabies hold period, for periods typically from six-eight months to well over a year, and often for even longer periods.

11. There is no explicit statutory authority to hold the dogs beyond the rabies hold period, and there are no rules, standards, regulations or procedures concerning i) when it is permissible to seize and hold the dogs, ii) the method to assess the severity of a dog bite or attack and the circumstances surrounding such an incident, iii) any limits on the unfettered discretion of the defendants' ACOs in interpreting and enforcing CGS §22-358(c), and iv) any opportunity to challenge the propriety of the seizure and hold of plaintiffs' dogs, thereby rendering enforcement of the statute arbitrary and capricious, and therefore constituting a violation of plaintiffs' rights under the Fourth Amendment to be free from unreasonable seizures.

12. The defendants' ACOs, pursuant to their enforcement of CGS §22-358(c), and therefore under color of state law, have seized and continue to hold the named plaintiffs' property, their dogs, while not providing plaintiffs with a prompt, post-seizure opportunity to be heard at a meaningful time and in a meaningful manner to contest the basis, validity and necessity of the initial seizures and/or continued retention of their dogs, and thus violates plaintiffs' rights to the procedural due process requirements of the Fourteenth Amendment.

## II.    JURISDICTION AND VENUE

13. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to plaintiffs by the Constitution of the United States.

14. The Court has jurisdiction over this action by virtue of 28 U.S.C. §§ 1331 and 1343(a)(3), as this is a civil action arising under the Constitution of the United States.

15. This Court has jurisdiction over plaintiffs' claims for declaratory relief by virtue of 28 U.S.C. §§ 2201 and 2202.

16. Venue is conferred by 28 U.S.C. § 1391(b), as all defendants are municipalities located in Connecticut, and the events giving rise to this action occurred in Connecticut.

## III.   JURY DEMAND

17. Pursuant to Fed. R. Civ. P. 38(b), plaintiffs demand trial by jury in this action.

## IV.   PARTIES

*Plaintiffs*

18. All named plaintiffs[2] and all members of the putative plaintiff class are owners of

---

[2] Plaintiff Glorianna Lagnese is a resident of the City of Waterbury, Connecticut. She is the owner of a dog named Rose, who was seized and has been held by the City of Waterbury since April 20, 2014.
- Plaintiff Rebound Hounds Res-Q Inc. is a 501(c)(3) not-for-profit corporation domiciled in the State of New York with a principle place of operation in the State of New York, which regularly keeps, fosters and places dogs within the state of Connecticut. Rebound Hounds is the owner of a dog named Yeezy, who was seized and has been held by the Town of Manchester, Connecticut since December 23, 2014.
- Plaintiff Donald J. Anderson, Jr. is a resident of the Town of Southington, Connecticut. He is the owner of a dog named Bubba, who was seized and has been held by the Town of Southington since May 23, 2015.

dogs who have been or will be seized by, respectively, the named defendant municipalities or members of the putative defendant class.

19. All of the dogs owned by the plaintiffs or putative plaintiff class members have been or will be alleged to have been involved in an alleged bite incident and have been or will be seized and held by the respective municipality pursuant to CGS §22-358(c).

20. Plaintiffs continue to reside in and/or visit or conduct business in the State of Connecticut and either own other dogs or intend to obtain additional dogs that they fear will be seized and retained or killed by the towns incident to the town's continuing enforcement of Conn. Gen. Stat. § 22-358(c). Furthermore, additional class members continue to increase the size of the Plaintiff Class on a continuing basis, thereby further demonstrating the necessity for prospective injunctive relief.

*Defendants*

21. Each of the named defendant municipalities and the putative defendant class[3] members are legal entities for purposes of 42 U.S.C. §1983. Each defendant is responsible for the hiring, control and supervision of its departments, including but not limited to its Police and Animal Control Departments and its officers and agents, as well as responsible for the implementation and maintenance of official and unofficial customs, policies and practices pertaining to the day-to-day functioning of the municipality's Police and Animal Control Departments. At all relevant times, each defendant acted by and through its agents, servants and

---

[3] The putative defendant class constitutes all one hundred sixty-nine (169) Towns within the State of Connecticut by reason of their enforcement of CGS § 22-358(c).

employees, including but not limited to its police officers and animal control officers (ACOs).

22. The ACOs of each of the named defendant municipalities and the putative defendant class members are authorized to enforce Conn. Gen. Stat. § 22–358(c).

## V.    CLASS ALLEGATIONS

*The Plaintiff Class*

23. The named plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2), on their behalf and on behalf of all other persons similarly situated ("Plaintiff Class"). The named plaintiffs are representative parties of a class of individuals consisting of all dog owners whose dogs have been, or will in the future be, seized and held by a Connecticut municipality pursuant to a municipal dog disposal (i.e., execution/kill) or restraining order issued incident to the municipality's enforcement of Conn. Gen. Stat. § 22–358(c).

24. The named plaintiffs and all Plaintiff Class members did not or will not consent to the issuance of the restraint or disposal order against their dogs issued incident to the municipal defendant's enforcement of Conn. Gen. Stat. § 22–358(c), and they timely appealed or will timely appeal such decision to the Connecticut Department of Agriculture, while their dogs are impounded by the municipality pending resolution of such administrative appeal.

25. *Numerosity* — Joinder of all members of the Plaintiff Class is impracticable because the class is so numerous. *See* Fed. R. Civ. P. 23(a)(1). The exact size of the Plaintiff Class is currently unknown because the Connecticut Department of Agriculture, which hears appeals from municipal dog disposal (i.e., execution/kill)

and restraining orders, does not publish statistics of all dogs so seized and held, and does not yet have current statistics available through the present regarding appeals filed. However, in the years 2012–2014, fifty-four (54) appeals were filed, and of those, twenty-three (23) appeals were filed in 2014 alone. As typified by Plaintiff Anderson, whose appeal was filed shortly before this action was originally brought on June 24, 2015, appeals, and therefore additional class members, continue to presently increase the size of the Plaintiff Class. Additionally, from July 1, 2015 through June 30, 2016, a total of twelve hundred and seventy-seven (1,277) dogs were killed by the members of the putative defendant class.[4] The Plaintiff Class is therefore sufficiently numerous to make joinder impractical. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members."); *Robidoux v. Celani*, 987 F.2d 931, 935–36 (2d Cir. 1993) (holding that a class of twenty-two (22) members was sufficiently numerous that joinder of all members would be impracticable); *see id.* at 935–36 (citing approvingly *Grant v. Sullivan*, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (holding that a court "may certify a class even if it is composed of as few as 14 members.").

26. Furthermore, the Plaintiff Class is comprised of members spread out across the State of Connecticut. *See Robidoux*, 987 F.2d at 935–36 (finding that joinder of all prospective class members would be impracticable in part because the members were spread out over the State of Vermont).

---

[4] Because the Department of Agriculture does not publish statistics as to why the dogs were killed, it can be presumed some of these dogs were killed for reasons other than the municipality's enforcement of CGS §22-358(c).

27. *Commonality* — The cases of the named plaintiffs and members of the proposed class raise identical and common questions of law and fact concerning the complete lack of any rules, regulations, standards, guidelines or procedures for the interpretation or enforcement of CGS §22-358, which results in i) all of the defendants' ACOs exercising unfettered discretionary authority to continue to seize and hold plaintiffs' dogs following an alleged bite incident and in deciding to issue restraint or disposal orders, and ii) the denial of plaintiffs' rights to a prompt post-seizure, pre-judgment probable cause hearing regarding the warrantless seizure and retention of their dogs in violation of the Fourth and Fourteenth Amendments to the United States Constitution. *See* Fed. R. Civ. P. 23(a)(2).

28. *Typicality* — The due process claims of the named plaintiffs are typical of those of the class, and it is expected defendants will raise the same defenses to the claims. *See* Fed. R. Civ. P. 23(a)(3). The named plaintiffs' claims are typical of the claims of the class because the named plaintiffs and all class members were or will be affected in the same manner by the defendant municipalities' enforcement of Conn. Gen. Stat. § 22–358(c) in seizing and holding their dogs without providing any hearing in a meaningful time or otherwise, to challenge the continued seizure of their property. The injunctive and declaratory relief sought by the named plaintiffs is also typical of the class because the nature of the violations experienced, extended unreasonable seizures without any process to challenge them, are similar to those suffered by all members of the class.

29. *Adequacy* — The named plaintiffs will adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). Each named plaintiff is a member of the class, his or her claims are coextensive with those of the class, and their interests do not

conflict. Moreover, the named plaintiffs and the class are represented by the same attorney and the general counsel for The Lexus Project, Inc. ("Class Counsel")—a 501(c)(3) not-for-profit corporation experienced in and specifically chartered for the litigation of the rights of dog owners whose dogs are alleged to be dangerous. Class Counsel intends to prosecute this action vigorously for the benefit of the entire class.

30. *Fed. R. Civ. P. 23(b)(2)* — Plaintiffs are entitled to injunctive and declaratory relief declaring Conn. Gen. Stat. § 22–358(c) unconstitutional as applied by failing to grant the named plaintiffs a prompt post-seizure, pre-judgment probable cause hearing, in that the named defendants were acting pursuant to local custom, usage, practice or policy, as well as pursuant to Conn. Gen. Stat. § 22–358(c), which vests unfettered discretion in the municipal defendants' animal control officers to seize dogs without rules in an arbitrary and capricious manner, and which does not require municipalities to provide post-seizure, pre-judgment probable cause hearings or any process to timely challenge the seizure. As all of the foregoing applies to all members of the proposed Defendant Class, declaratory and injunctive relief against the Defendant Class as a whole is thus appropriate. *See* Fed. R. Civ. P. 23(b)(2).

*The Defendant Class*

31. The Plaintiff Class brings this action against defendants City of Waterbury, Town of Manchester and Town of Southington, individually and as representatives of all one hundred sixty-nine (169) Connecticut municipalities ("Defendant Class"). *See Brown v. Kelly*, 609 F.3d 467, 479 (2d Cir. 2010) (holding that Fed. R. Civ. P.

23(b)(1)(A), 23(b)(1)(B) and 23(b)(2) permit certification of defendant classes).

32. *Numerosity* — Joinder of all members of the Defendant Class is impracticable because the class is so numerous. *See* Fed. R. Civ. P. 23(a)(1). The Defendant Class, consisting of one hundred sixty-nine (169) municipalities, each of which is authorized to independently enforce Conn. Gen. Stat. § 22–358(c), surely satisfies the numerosity requirement. *See Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members."). Furthermore, the Defendant Class is comprised of members spread out across the State of Connecticut. *See Robidoux*, 987 F.2d at 935–36 (holding that a class of twenty-two (22) members was sufficiently numerous that joinder of all members would be impracticable, in part because the members were spread out across the state of Vermont).

33. *Commonality* — The acts of the named defendants and members of the proposed defendant class in interpreting and enforcing CGS §22-358(c) without any rules, regulations, standards, procedures or guidelines, and therefore in their own discretionary manner, raise common questions of law and fact concerning not only such acts, but also concerning the denial of the Plaintiff Class members' rights to a prompt post-seizure, pre-judgment probable cause hearing regarding the warrantless seizure and retention of their dogs in violation of the Fourth and Fourteenth Amendments to the United States Constitution (*See* Fed. R. Civ. P. 23(a)(2), as well as the denial of the Plaintiff Class members' due process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* Fed. R. Civ. P. 23(a)(2).

34. Notwithstanding the fact that the Connecticut Uniform Administrative Procedures

Act (UAPA), Conn. Gen. Stat. § 4-166, et seq.,affirmatively provides for the Commissioner of Agriculture to promulgate rules and regulations for the enforcement of Conn. Gen. Stat § 22–358(c) and for the conduct of appeals therefrom, no such rules, regulations, policies, procedures, guidelines or practices have been so promulgated.

35. Accordingly, each of the members of the proposed class is authorized to and does enforce Conn. Gen. Stat. § 22–358(c) according to its own rules, regulations, policies, procedures, guidelines and practices, none of which provide a right to either a pre-seizure or a prompt post-seizure, pre-judgment probable cause hearing regarding the warrantless seizure and retention of the Plaintiff Class members' dogs.

36. *Typicality* — The named defendants will raise defenses typical of the prospective class members, including but not limited to, the defense that they rely upon the due process provided by the Connecticut Department of Agriculture, despite knowing that the Connecticut Department of Agriculture has never promulgated any rules, regulations, policies, procedures, guidelines or standards for the enforcement of Conn. Gen. Stat. § 22–358(c) or for appeals from orders issued pursuant to Conn. Gen. Stat. § 22–358(c). *See* Fed. R. Civ. P. 23(a)(3). Each named defendant is a member of the class, and its defenses are coextensive with those of the class.

37. *Adequacy* — The named defendants will adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a)(4). The named defendants are class members and do not possess "interests that are antagonistic to one another" nor to any of the prospective class members. *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d

764, 778 (2d Cir. 1996) (internal quotation marks omitted).

38. Thus, all members of the Defendant Class share the same interest. *See Brown*, 609 F.3d at 479–80 (finding that the named defendants would not adequately represent the interests of the proposed defendant class because they asserted claims for damages that did not apply to the defendant class as a whole).

39. *Fed. R. Civ. P. 23(b)(1)(A)* — Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members as to what process is due and the constitutionality of their enforcement of Conn. Gen. Stat. § 22–358(c) without the Connecticut Department of Agriculture having promulgated any rules, regulations, policies, procedures, guidelines or standards. This would establish incompatible standards of conduct for the party opposing the class.

40. Courts have commented that 23(b)(1)(A) applies largely to lawsuits seeking declaratory or injunctive relief against the party opposing the class. Contrary rulings by different courts could create a situation where a party may be ordered to engage in irreconcilable conduct. See *Nat'l. Treasury Employees Union v Reagan*, 509 F. Supp 1337 (DDC 1981). Thus, if a situation should arise in which different results in separate actions would result in the opposing parties' inability to pursue a clear course of conduct, certification under Rule 23(b)(1)(A) may be appropriate. *United Brotherhood of Carpenters and Joiners of America Local 899 v Phoenix Associates, Inc.*, 152 F.R.D. 518, 523 (SD W Va 1994).

41. *Fed. R. Civ. P. 23(b)(2)* — Failing to grant the named plaintiffs a prompt post-seizure, pre-judgment probable cause hearing, the named defendants were acting pursuant to local custom, usage, practice or policy, as well as pursuant to Conn.

Gen. Stat. § 22–358(c), for which the Connecticut Department of Agriculture has not promulgated any rules, regulations, policies, procedures, guidelines and practices and which statute does not require municipalities to provide prompt post-seizure, pre-judgment probable cause hearings. This applies to all members of the proposed Defendant Class. Declaratory and injunctive relief against the Defendant Class as a whole is thus appropriate. *See* Fed. R. Civ. P. 23(b)(2).

42. Subsection 23(b)(2) class actions are "limited to those class actions seeking primarily injunctive or corresponding declaratory relief." *Barnes v. The American Tobacco Company*, 161 F.3d 127 (3rd Cir. 1998) citing Conte, 1 Newberg on Class Actions 3d § 4.11. See also, *Zimmerman v Bell*, 800 F.2d 386, 389 (4th Cir. 1986); *Paxman v Campbell*, 612 F.2d 848, 854 (4th Cir. 1980) cert denied, 449 U.S. 1129, 101 S.Ct 951, 67 L.Ed 2d 117 (1981); *Lukenas v Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir. 1976).

43. The 23(b)(2) class "serves most frequently as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." *Baby Neal v. Casey*, 43 F.3d 48, 58 - 59 (3rd Cir. 1994). Indeed, (b)(2) was "designed for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Barnes v. The American Tobacco Company*, 161 F.3d 127 (3rd Cir. 1998) citing Conte, 1 Newberg on Class Actions 3d § 4.11. See also, *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("As the Advisory Committee Notes explain, 23(b)(2) was adopted in order to permit the prosecution of civil rights actions.") Thus, in the context of civil rights litigation seeking declaratory relief for violation of constitutional rights, Rule 23(b)(2) actions have been held to be particularly

appropriate. *Johns v DeLeonardis,* 145 F.R.D. 480, 484 (ND Ill 1992).

## VI. STATUTORY SCHEME

44. Defendants are responsible for enforcing Conn. Gen. Stat. § 22-358(c), the statute

of which Plaintiffs complain. It reads, in pertinent part:

> (c) . . . When any dog, cat or other animal has bitten a person on the premises of the owner or keeper of such dog, cat or other animal, the Chief Animal Control Officer, any animal control officer, any municipal animal control officer or regional animal control officer may quarantine such dog, cat or other animal on the premises of the owner or keeper of such dog, cat or other animal. The commissioner, the Chief Animal Control Officer, any animal control officer, any municipal animal control officer or any regional animal control officer may make any order concerning the restraint or disposal of any biting dog, cat or other animal as the commissioner or such officer deems necessary. Notice of any such order shall be given to the person bitten by such dog, cat or other animal within twenty-four hours. The owner of such animal shall pay all fees as set forth in section 22-333. On the fourteenth day of such quarantine the dog, cat or other animal shall be examined by the commissioner or someone designated by the commissioner to determine whether such quarantine shall be continued or removed. Whenever any quarantine is ordered under the provisions of this section, notice thereof shall be given to the commissioner and to the person bitten or attacked by such dog, cat or other animal within twenty-four hours. Any owner or keeper of such dog, cat or other animal who fails to comply with such order shall be fined not more than two hundred fifty dollars or imprisoned not more than thirty days or both. If an owner or keeper fails to comply with a quarantine or restraining order made pursuant to this subsection, the Chief Animal Control Officer, any animal control officer, any municipal animal control officer or regional animal control officer may seize the dog, cat or other animal to insure such compliance and the owner or keeper shall be responsible for any expenses resulting from such seizure. Any person aggrieved by an order of any municipal animal control officer, the Chief Animal Control Officer, any animal control officer or any regional animal control officer may request a hearing before the commissioner within fourteen days of the issuance of such order. After such hearing, the commissioner may affirm, modify or revoke such order as the commissioner deems proper. Conn. Gen. Stat. § 22-358(c) (emphasis added).

45. Ultimate discretion and authority for enforcing Conn. Gen. Stat. § 22-358(c) is

vested in Defendants' executive officials, namely, animal control officers ("ACOs").

The statute prescribes no standards, procedures, guidelines or rules to guide ACOs in the enforcement of the statute and to limit the discretion they exercise. Neither the defendant municipalities nor the Connecticut Department of Agriculture has set forth any rules, promulgated regulations, or published any guidelines or directives or other materials to delineate what is a proper or improper exercise of such discretion.

46. There is no uniformly applied standard for the hiring of ACOs, no requisite level of knowledge or expertise for the position, and no standard procedures or requirements according to which ACOs are trained to determine whether a dog is dangerous and what disposition is appropriate. There is a complete lack of standards and guidelines.

47. Accordingly, if a dog owner appeals an ACO's decision to issue a disposal order, the burden of proof at a subsequent appeal hearing is improperly placed upon the dog owner to "prove" the unreasonableness of the ACO's determination, as opposed to the burden being properly placed upon the municipality to prove a violation of Conn. Gen. Stat. § 22–358(c) has occurred, that the dog seized and subject to the destruction order is in fact the dog that allegedly committed the violation, and that the decision to order the destruction of the dog is not arbitrary and capricious but reasonable. Without any rules, standards, regulations or guidelines to establish the reasonableness of such a decision, it is impossible to establish, and therefore to review on appeal, whether such a decision satisfied any standards, rules or guidelines as to what is deemed reasonable under the law.

48. For these reasons, the above-referenced statute violates the rights of Plaintiffs

under the Fourth and Fourteenth Amendments to the United States Constitution.

## VII. FACTS

49. All of the dogs owned by the named plaintiffs[5] and all of the dogs whose owners will be members of the Plaintiff Class were or will be involved in an alleged dog bite or attack incident, an animal control officer took or will take possession of the dog for purposes of a mandatory fourteen-day rabies quarantine period, the dog was or will be held for the fourteen days and on the fifteenth day the ACO did or will refuse to release the dog, despite a request by the plaintiff owner to do so.

50. The subsequent seizure of the dog commencing on the fifteenth day was not or will not be carried out pursuant to a warrant. All of the dogs owned by the named plaintiffs were taken during 2014 or 2015 for a fourteen-day rabies hold. Thereafter, at the expiration of the rabies hold, defendants continued, and will continue to hold dogs, without any legal authority, court intervention or other oversight, and the dogs continue to be held by the respective named defendants through the present.

51. The ACO issued or will issue a restraint or disposal order pursuant to CGS §22-358(c), and the named plaintiff owners timely appealed, or the Plaintiff Class

---

[5] On April 20, 2014, Plaintiff Lagnese's dog, Rose, was involved in an alleged bite incident, and defendant City of Waterbury ACO Mark Ring took possession of Rose for a rabies hold. Fifteen days later, ACO Ring seized Rose and continues to hold the dog through the present. On December 23, 2014, Plaintiff Rebound Hounds Res-Q, Inc.'s dog, Yeezy, was involved in an alleged bite incident, and defendant Town of Manchester ACO Elyse McConnell took possession of Yeezy for a rabies hold. Fifteen days later, ACO McConnell seized Yeezy and continues to hold the dog through the present. On May 23, 2015, Plaintiff Anderson's dog, Bubba, was involved in an alleged bite incident, and defendant Town of Southington ACOs Joshua Karabin and David Ireland took possession of Bubba for a rabies hold. Fifteen days later, ACOs Karabin and Ireland seized Bubba and continue to hold the dog through the present. For each of the putative Plaintiff Class members, their dog was or will be involved in an alleged bite incident and held for a mandatory rabies hold, and thereafter was or will be seized and held at the expiration thereof.

members will timely appeal, such order.

52. The defendants, without any statutory authority to do so, have or will continue to hold the dog throughout the pendency of the plaintiff owner's appeal of the order, which typically lasts between six to eight months, and often lasts for more than a year.

53. There are no rules, regulations, standards, policies or procedures, available prior to or at any time during the pendency of the appeal, during which the dog is held and retained, to challenge the proprietary of the dog's retention or to seek release of the dog pending the Department of Agriculture administrative hearing, which hearing also does not permit such a challenge.

54. There are no rules, regulations, procedures, standards or policies to assess the severity of a dog bite or attack and the circumstances surrounding such an incident, to inform dog owners, in a uniform manner, what behavior is prohibited under the statute, or to provide any basis for determining whether a violation of the statute has occurred, and to what extent any enforcement action should be taken, if any.

55. There are no rules, regulations, procedures, standards or policies to determine the requisite level of knowledge or expertise of the ACOs, and no standard procedures or requirements according to which ACOs are trained to determine whether a dog is dangerous and what disposition is appropriate, nor to guide ACOs in the uniform enforcement of the statute and to limit the discretion they exercise.

56. There are no rules, regulations, procedures, standards or policies to establish the reasonableness of an ACO's decision to issue a restraint or disposal order, and therefore it is impossible to review on appeal, whether such a decision satisfied

any standards, rules or guidelines as to what is deemed reasonable under the law and therefore to determine whether a violation of the statute occurred.

## VIII.  FIRST CLAIM FOR RELIEF

57. Plaintiffs hereby incorporate paragraphs 1 through 56 of this second amended complaint as though each of these paragraphs were set forth under this claim for relief.

58. CGS §22-358(c) is unconstitutional on its face because it fails to define any method of assessing the severity of an alleged dog bite or attack, or the circumstances of the bite or attack, in order to determine whether any enforcement is appropriate and if so, whether and when the issuance of a restraint order is proper as opposed to issuing a disposal order.

59. Due to the lack of any rules, standards, policies, procedures or regulations, it fails to inform a person of reasonable intelligence what behavior is prohibited, what the appropriate range of punishment for any specific behavior should be, and it fails to provide any basis for making enforcement decisions.

60. There are no rules nor uniform standards for determining a violation thereunder, and each ACO therefore enforces the statute according to his own whims with no oversight or guidance of any sort, causing the enforcement of CGS §22-358(c) to be, by definition, arbitrary and capricious, and violative of both the due process clause and equal protection clause of the US Constitution.

61. The statute is overbroad because there are no rules nor uniform standards for determining what is prohibited under the statute, and each ACO determines on his own what he considers prohibited, thus causing conduct which was not intended to

be covered by the statute and is permissible, to be subject to enforcement.

62. The statute is unconstitutional as applied because the Connecticut Uniform Administrative Procedures Act (UAPA, CGS §4-167, et seq.) requires the Commissioner of Agriculture to promulgate regulations for the enforcement of CGS §22-358(c) by defendants' ACOs, and the Commissioner of Agriculture has never promulgated any rules, policies, procedures, guidelines, practices or regulations regarding the enforcement of CGS §22-358(c).

63. While the statute is facially unconstitutional because there are no rules, policies, procedures, guidelines, practices or regulations regarding the interpretation and enforcement of the statute, when read in conjunction with the UAPA it is possible, were the Commissioner to promulgate such rules, policies, procedures, guidelines, practices or regulations regarding the enforcement of CGS §22-358(c), to rehabilitate the statute and properly interpret it to permit a valid enforcement of the statute, and thus, the statute is constitutionally void as applied until such time as the Commissioner promulgates such rules, policies, procedures, guidelines, practices or regulations regarding the enforcement of CGS §22-358(c) as required by the UAPA.

64. As a result, plaintiffs suffered, and will continue to suffer into the future, harm as a result of the total lack of any rules, regulations, guidelines, practices or procedures regarding the enforcement of CGS §22-358(c). They will continue to be deprived of their constitutional rights indefinitely until the Commissioner promulgates such rules, regulations, guidelines, practices or procedures regarding the enforcement of CGS 22-358(c).

65. Plaintiffs therefore urge that the appropriate remedy is for this Court to declare CGS §22-358(c) (the statute) void as applied (rather than as written) and enjoin any enforcement of the statute unless and until the Commissioner promulgates such rules, regulations, guidelines, practices or procedures regarding the enforcement of the statute that would pass constitutional muster.

## VIII. SECOND CLAIM FOR RELIEF

66. Plaintiffs hereby incorporate paragraphs 1 through 65of this complaint as though each of these paragraphs were set forth under this claim for relief.

67. Dogs are property and for 4th Amendment purposes, dogs are considered effects and therefore entitled to protection.

68. A seizure of plaintiffs' dogs occurred on the fifteenth day after the municipal ACO took possession of the dog and did not return it to its owner.

69. A continued retention of plaintiffs' property, their dog, after the fourteen-day rabies quarantine without first obtaining a warrant, was a warrantless seizure.

70. Plaintiffs have been deprived of visitation with their dogs, and of being able to provide their choice of care, food, medical attention, exercise and other indicia of ownership to their dogs.

71. The seizure of plaintiffs' dogs is unreasonable because there exists no explicit statutory authority to hold the dog beyond the fourteen-day rabies quarantine period, and the disposal order forms provided by the State Department of Agriculture and utilized by the defendants' ACOs specifically contemplate the dog will be returned to the possession of the owner.

72. The seizure is unreasonable because there are no rules, guidelines, procedures,

policies, regulations or uniform standards concerning when it is permissible to seize and retain plaintiffs' dogs beyond the fourteen-day rabies quarantine period.

73. The seizure is unreasonable because the ACOs have no required specific training or specialized knowledge regarding dog bites or dog behavior nor do they have any legal training to enable them to make a determination to seize and detain the dog.

74. The seizure is unreasonable because there is no uniform method of assessing the severity of an alleged dog bite or attack, or the circumstances of such bite or attack, and therefore no standardized process, rules, procedures or policies exist to make a determination to seize and detain the dog beyond the fourteen day rabies quarantine period.

75. The seizure is unreasonable because the length of the seizure and retention is not brief or for a predetermined length of time, and lasts for a minimum of 6-8 months and often longer than one year.

76. The seizure is unreasonable because of the absence of any rules, guidelines, procedures, policies, regulations or uniform standards to limit the unfettered discretion of the ACO's in enforcing CGS §22-358(c), and the lack of any review process or means to challenge the propriety of the seizure and retention of plaintiffs' dogs after the 14 day rabies quarantine renders enforcement of the statute arbitrary and capricious.

77. By seizing plaintiffs' dogs without a warrant and retaining possession of such dogs for over a year after the expiration of the "14-day Rabies Quarantine"[6] period

_____

[6] In Skinner v. Chapman, 326 F.Supp.2d 431 (W.D.N.Y.2004), the Court concluded that an 11-day detention for purposes of observing the dog for rabies "does not rise to the level of a constitutional deprivation of property." Id., at 433. That detention was brief, however, and for a pre-determined period of time. Thus, for the purpose of this proceeding, Plaintiffs do not challenge the original 14 days of confinement required as a rabies hold seizure to the extent same was occasioned for the purpose of observing the dog for rabies.

incident to the defendants' enforcement of CGS §22-358(c), and without providing plaintiffs with the necessary due process, including an opportunity to contest the validity of the seizure and retention, defendants violated plaintiffs' rights under the Fourth Amendment to the U.S. Constitution.

78. Conn. Gen. Stat. § 22-358(c), as enforced by defendants, is unconstitutional because it permits warrantless seizures while at the same time vesting ultimate discretion and authority in the Defendants' animal control officers to seize plaintiffs' property, with no rules or procedures that animal control officers must follow.

79. Although the named plaintiffs filed appeals to the Connecticut Department of Agriculture in accordance with Conn. Gen. Stat. § 22–358(c), the focus of such administrative appeals is the validity of the disposal or restraining orders—not the validity of the initial seizure, which occurred on the fifteenth day following the time when defendants' ACOs took possession of the dog. Hence, absent a prompt post-seizure probable cause hearing, the plaintiffs effectively have no opportunity to contest the warrantless seizure and retention of their dogs.

80. Therefore, in failing to provide plaintiffs with such an opportunity and thus also causing plaintiffs to suffer an unreasonable seizure of their property, defendants violated plaintiffs' Fourth Amendment rights.

## IX. THIRD CLAIM FOR RELIEF

81. Plaintiffs hereby incorporate paragraphs 1 through 80 of this complaint as though each of these paragraphs were set forth under this claim for relief.

82. Plaintiffs own their dogs, and therefore have a constitutionally recognized property interest in them.

83. Defendants, through their animal control officers, have held, seized, retained and issued disposal orders pursuant to their enforcement of CGS §22-358(c) (the statute) against plaintiffs' dogs, all under color of state law.

84. Having no specific statutory authority to do so, defendants have held and retained, and continue to retain, plaintiffs' dogs, all in excess of one year, during which they have not provided plaintiffs an opportunity to contest the validity of the seizure and retention of plaintiffs' dogs, thus violating plaintiffs' rights under the 14th Amendment to the US Constitution.

85. The statute is unconstitutional because there are no rules, policies, procedures, guidelines, practices or regulations regarding its interpretation and enforcement.

86. The statute is unconstitutional because the named plaintiffs, whose dogs have been seized and retained in excess of one year as of the date of this complaint, have never been afforded an opportunity to be heard at a meaningful time and in a meaningful manner at which to contest the validity of the seizure of their dogs and the dogs' continued retention.

87. The statute is unconstitutional because plaintiffs have also been deprived of visitation with their dogs, and of providing their choice of care, food, medical attention, exercise and other indicia of ownership to their dogs.

88. Defendants' enforcement of the statute in the foregoing manner has resulted in a meaningful interference and deprivation of plaintiffs' property, their dogs, without any process and is violative of the procedural due process requirements of the 14th

Amendment to the US Constitution.

89. Defendants' enforcement of the statute against all plaintiffs has not provided them with timely notice and an opportunity for a hearing or any other review of the decision to seize and retain, such that plaintiffs' deprivation of their property, their dogs, without process, has occurred and continues to occur, thus violating plaintiffs' rights under the 14th Amendment.

90. Defendants have failed to provide plaintiffs with a prompt and timely post-seizure hearing before a neutral judicial or administrative officer to determine whether defendants (i) absent specific statutory authority to seize and retain, are authorized, without providing notice, an opportunity to be heard or any other process, to seize and retain plaintiffs' dogs, and under what circumstances they may do so; (ii) had probable cause to believe the dogs committed an act in violation of CGS §22-358(c); (ii) had probable cause to effectuate the warrantless seizures of their dogs under the 4th Amendment to the US Constitution; and (iii) had properly determined whether means short of detention of their dogs could satisfy the municipal defendants' need for continued impoundment and detention of their dogs.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1. Accept jurisdiction over this action;

2. Certify this action as a bilateral class action under Fed. R. Civ. P. 23(a) and 23(b)(1)(A) and 23(b)(2);

3. Declare Conn. Gen. Stat. §22-358(c) unconstitutional on its face, or in the alternative as applied.

4. Declare Conn. Gen. Stat. §22-358(c) unconstitutional as violating the 4th

Amendment of the US Constitution;

5. Declare Conn. Gen. Stat. §22-358(c) unconstitutional as violating the 14th Amendment of the US Constitution;

6. Order defendants to release to their owners those dogs seized and held for disposal, unless such a hearing is promptly held;

7. Issue a permanent injunction barring the defendant class from retaining possession of dogs after the expiration of the 14-day rabies hold unless and until they provide a prompt post seizure pre-judgment hearing before a neutral judicial or administrative officer.

8. Award reasonable attorneys' fees and costs pursuant to all applicable statutes, codes and rules, including 42 U.S.C. § 1988; and

9. Grant any further relief that this Court deems just and appropriate.

Dated: November 14, 2016

___/s/ Thompson Gould Page___
Thompson Gould Page
Connecticut Federal Bar No. ct11665
Thompson Gould Page, LLC
1 Linden Place, Suite 108
Hartford, CT 06106-1748
(t) 860-895-6644
(c) 860-983-7655
(f) 860-895-6672
thom@tpagelaw.com

__/s/ Richard Bruce Rosenthal_____
Richard Bruce Rosenthal
Connecticut Federal Bar No. 29709
120-82 Queens Boulevard
Kew Gardens, NY 11415-1204
(t) 718-261-0200
(c) 516-319-0816
(f) 718-793-2791
richard@thedoglawyer.com

Attorneys for Plaintiffs

**CERTIFICATION**

This is to certify that on November 14, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Thompson Gould Page
Thompson Gould Page