```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

```
------------------------------- x
GLORIANNA LAGNESE; REBOUND       :
HOUNDS RES-Q INC., DONALD J.     :
ANDERSON, JR.; individually and  :
on behalf of all other persons   :
similarly situated,              :
                                 :
         Plaintiffs,             :    Civil No. 3:15-cv-975(AWT)
                                 :
v.                               :
                                 :
CITY OF WATERBURY; TOWN OF       :
MANCHESTER; TOWN OF SOUTHINGTON; :
individually and on behalf of    :
all 169 municipalities in the    :
State of Connecticut,            :
                                 :
         Defendants.             :
------------------------------- x
```

## ORDER RE PLAINTIFF'S MOTION FOR
## PRELIMINARY INJUNCTION AND PROVISIONAL CLASS CERTIFICATION

For the reasons set forth below, the plaintiff's motion for a preliminary injunction and provisional class certification is being denied.

### I.    BACKGROUND

Plaintiffs Glorianna Lagnese, Rebound Hounds Res-Q Inc. and Donald J. Anderson, Jr., individually and on behalf of all other persons similarly situated, bring this action against defendants City of Waterbury, Town of Manchester and Town of Southington, individually and on behalf of all 169 similarly situated municipalities in the State of Connecticut, seeking declaratory

and injunctive relief related to the seizure and impoundment of the plaintiffs' dogs.

The plaintiffs bring four claims. The first claim is a claim that Connecticut General Statutes § 22-358(c) is unconstitutional on its face. The plaintiffs allege, in the First Count, that "it fails to define any method of assessing the severity of an alleged dog bite or attack, or the circumstances of the bite or attack, in order to determine whether any enforcement is appropriate and if so, whether and when the issuance of a restraint order is proper as opposed to issuing a disposal order." Second Amended Class Action Complaint ("Compl.") (Doc. No. 44) at ¶ 58.

The plaintiffs' second claim is that Connecticut General Statutes § 22-358(c) is unconstitutional as applied. The plaintiffs allege, also in the First Count, that

> The statute is unconstitutional as applied because the Connecticut Uniform Administrative Procedures Act (UAPA, CGS §4-167, et seq.) requires the Commissioner of Agriculture to promulgate regulations for the enforcement of CGS §22-358(c) by defendants' ACOs, and the Commissioner of Agriculture has never promulgated any rules, policies, procedures, guidelines, practices or regulations regarding the enforcement of CGS §22-358(c).

Compl. ¶ 62.

The plaintiffs' third claim is a claim for a violation of their Fourth Amendment rights. The plaintiffs allege, in the Second Count:

> The seizure of plaintiffs' dogs is unreasonable because there exists no explicit statutory authority to hold the dog beyond the fourteen-day rabies quarantine period, and the disposal order forms provided by the State Department of Agriculture and utilized by the defendants' ACOs specifically contemplate the dog will be returned to the possession of the owner.
>
> By seizing plaintiffs' dogs without a warrant and retaining possession of such dogs for over a year after the expiration of the "14-day Rabies Quarantine" period incident to the defendants' enforcement of CGS §22-358(c), and without providing plaintiffs with the necessary due process, including an opportunity to contest the validity of the seizure and retention, defendants violated plaintiffs' rights under the Fourth Amendment to the U.S. Constitution.

Compl. ¶¶ 71, 77.

The plaintiffs' fourth claim is a procedural due process claim. The plaintiffs allege, in the Third Count:

> Defendants' enforcement of the statute in the foregoing manner has resulted in a meaningful interference and deprivation of plaintiffs' property, their dogs, without any process and is violative of the procedural due process requirements of the 14th Amendment to the US Constitution.
>
> Defendants' enforcement of the statute against all plaintiffs has not provided them with timely notice and an opportunity for a hearing or any other review of the decision to seize and retain, such that plaintiffs' deprivation of their property, their dogs, without process, has occurred and continues to occur, thus violating plaintiffs' rights under the 14th Amendment.

Compl. ¶¶ 88, 89.

Plaintiff Glorianna Lagnese's dog, Rose, was seized by the City of Waterbury on April 20, 2014 after a bite incident where the complainant was not on the premises of Rose's owner or keeper. A disposal order was issued on April 25, 2014 (i.e. five days after the dog was seized). It was appealed to the

3

Commissioner of the Connecticut Department of Agriculture (the "Commissioner"). A hearing was held but Lagnese did not appear at the hearing despite being given notice. However, an attorney appeared for her after the hearing. The attorney was invited to make a written submission. Subsequently, a final decision upholding the disposal order was issued on November 17, 2015. Lagnese appealed to the Connecticut Superior Court and the appeal was dismissed for failure to prosecute.

Plaintiff Rebound Hounds Res-Q, Inc.'s dog, Yeezy, was seized by the Town of Manchester on December 23, 2014 after a bite incident where the complainant was not on the premises of Yeezy's owner or keeper. A disposal order was issued on January 5, 2015 (i.e. 13 days after the dog was seized). It was appealed. After numerous continuances requested by both sides, the hearing was completed on April 1, 2016. The hearing officer has not issued a final decision.

Plaintiff Donald J. Anderson, Jr.'s dog, Bubba, was seized by the Town of Southington on May 23, 2015 after a bite incident where the complainant was not on the premises of Bubba's owner or keeper. A disposal order was issued on June 6, 2015 (i.e. 14 days after the dog was seized). It was appealed. After a hearing was scheduled, it was adjourned on consent.

Under § 22-358(c), any person aggrieved by an order of an animal control officer may request a hearing before the

Commissioner. Commissioner Steven K. Reviczky, who was the only witness in this matter, testified about the hearing process. When a hearing is scheduled, a notice is sent out and the rules of practice are mailed with that notice. The hearing is conducted by a hearing officer and is conducted like a "mini-trial". Dog owners can testify and can bring any witnesses that they wish to bring to the hearing; the Commissioner testified that they often do. Dog owners also have the ability to subpoena witness to appear at the hearing. Notwithstanding the allegations by the plaintiffs and arguments by their counsel, the municipality has the burden of establishing by a preponderance of the evidence that it was appropriate to issue a disposal order.

Section 22-358(c) provides that "after such hearing, the commissioner may affirm, modify or revoke such order as the commissioner deems proper". The Commissioner testified that in determining whether to affirm, modify or revoke a disposal order, he looks at the entire record, including the nature of the bite or attack, where the bite or attack occurred, the extent of the injuries, and (if it is in the record) the history of the animal. The Commissioner testified that he has modified orders personally, based on the record and the evidence before him. He also testified that in four instances he has revoked a disposal order, rebutting the assertion by the plaintiffs that

5

such disposal orders are never overturned in cases involving biting.

The Commissioner testified that parties are able to file motions, including motions to expedite the hearing and/or to determine whether there is probable cause to hold the dog pending the hearing and/or decision.

**II. MOTION FOR PRELIMINARY INJUNCTION**

"A party seeking preliminary injunctive relief must establish: (1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, and (2) a likelihood of irreparable harm if the requested relief is denied." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 152-53 (2d Cir. 2007). The plaintiffs make an argument that, with respect to the second prong, that they should not be restricted to establishing a likelihood of success on the merits, citing to Time Warner Cable of NYC v. Bloomberg L.P., 118 F.3d 917, 923-24 (2d Cir. 1997). That issue need not be addressed because the defendants do not advance such an argument.

If a party seeks a mandatory injunction, *i.e.*, an injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher

standard. "[I]n addition to demonstrating irreparable harm, '[t]he moving party must make a clear or substantial showing of a likelihood of success' on the merits, . . . a standard especially appropriate when a preliminary injunction is sought against [the] government." D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 510 (2d Cir. 2006) (citations omitted).

**A. First Claim: Unconstitutional On Its Face**

The plaintiffs claim that § 22-358(c) is unconstitutional on its face. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000).

The plaintiffs claim that § 22-358(c) is impermissibly vague because it does not define any method for assessing the severity or the circumstances of a bite or attack. The plaintiffs appear to contend that defining a method for assessing the severity of a dog bite or attack is necessary in order for the animal control officer to make a proper determination as to whether no enforcement, a restraint order or a disposal order is appropriate.

7

As to the circumstances of the bite or attack, the statute explicitly provides that if the bite or attack takes place when the complainant was not on the premises of the owner or keeper of the dog, the animal control officer is required to quarantine the dog. As to assessing the severity of a bite or attack for purposes of determining whether there shall be no enforcement, or enforcement in the form of a restraining order or in the form of a disposal order, § 22-358(c) provides that the animal control officer "may make any order concerning the restraint or disposal of any biting dog . . . as the commissioner or such officer deems necessary." Thus the statute provides clear guidance to animal control officers that orders concerning restraint or disposal of a dog can only be made with respect to a biting dog, and it is clear from the statute that the animal control officers must exercise their discretion in determining whether no enforcement, a restraint order, or a disposal order is most appropriate. It should be noted that the exercise of discretion contemplated in subsection 22-358(c) should not be viewed in isolation but in the context of the entire statute. Under subsection (b), "[a]ny person who is bitten, or who shows visible evidence of attack by a dog, . . . when such person is not upon the premises of the owner or keeper of such dog . . . may kill such dog . . . during such attack." Conn. Gen. Stat. § 22-358(b). Under § 22-358(f), that person cannot be held

8

criminally or civilly liable for killing the dog. Subsection (b) then goes on to provide that the person who was bitten or attacked or shows visible evidence of being attacked by a dog shall make a complaint to an animal control officer. Subsection (c) then picks up with the officer's response when such a complaint is made. Thus the statute does not provide for a complaint if all the dog has engaged in is "mouthing", a concern that was expressed by counsel for the plaintiffs during oral argument.

The plaintiffs have not shown how requiring animal control officers, who are required to complete a training course and are provided guidance from the Department of Agriculture on an ongoing basis, to exercise their discretion and judgment in making a decision as to what type of enforcement, if any, is appropriate does more to authorize or encourage arbitrary or discriminatory enforcement than various other laws that must be enforced by individuals performing a discretionary function (e.g., police officers deciding whether to arrest someone).

The court concludes that the plaintiffs have not met their burden of establishing either a likelihood of success on the merits or that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor.

9

### B. Second Claim: Unconstitutional As Applied

The plaintiffs second claim is that Connecticut General Statutes § 22-358(c) is unconstitutional as applied because Connecticut General Statutes § 4-167 requires the Commissioner to promulgate regulations for the enforcement of § 22-358(c) and the Commissioner has never done so.

The plaintiffs appear to rely on § 4-167(a)(2). It provides that each agency shall "adopt as regulations, rules of practice setting forth the nature of the requirements of all formal and informal procedures available provided such rules shall be in conformance with the provisions of this chapter." The Department of Agriculture has adopted procedures with respect to hearings. See Regs. Conn. State Agency § 22-7-21 et seq.. Those regulations address the nature and requirements of all formal and informal procedures with respect to hearings before the Department of Agriculture. The Department of Agriculture is not involved in any of the steps contemplated by § 22-358(c) prior to the step where a person requests a hearing before the Commissioner. Thus it is not apparent how the Department of Agriculture was required by § 4-167 to adopt regulations with respect to those steps.

The court concludes that the plaintiffs have not met their burden of establishing either a likelihood of success on the merits or that there are sufficiently serious questions going to

the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor.

### C. Third Claim: Fourth Amendment

The plaintiffs claim that the defendants violated their Fourth Amendment rights, first, by holding their dogs beyond the 14-day rabies quarantine period in the absence of explicit statutory authority to do so, and second, by holding their dogs for over a year without providing the plaintiffs an opportunity to test the validity of the seizure and detention.

As to the first point, there is explicit statutory authority for the defendants to hold dogs beyond the 14-day rabies quarantine period. The dog of each of the named plaintiffs was seized after a bite incident where the complainant was not on the premises of the owner or keeper. Section 22-358(c) provides that the officer "<u>shall</u> quarantine such dog . . . in a public pound or order the owner or keeper to quarantine it in a veterinary hospital, kennel or other building enclosure approved by the commissioner for such purpose." (emphasis added). Thus, notwithstanding how the language in the form disposal order is interpreted, the statute gives the animal control officer the option of seizing the dog. Section 22-358(c) also provides that "[a]ny order that requires restraint of an animal shall be effective upon its issuance and shall remain in effect during any appeal of such order to the

11

commissioner." Here, a disposal order was issued prior to the expiration of the 14-day rabies quarantine period with respect to the dog of each of the named plaintiffs, so after the issuance of these orders it was proper for each defendant to continue to hold the dog during the pendency of the appeal. As to the second point, the Commissioner testified that during the appeal process a dog owner has not only the right to appeal the disposal order or seek revocation of the order, but also the right to file motions, including a motion addressed to the continued retention of the dog pending disposition of the appeal by the Commissioner.

The court concludes that the plaintiffs have not met their burden of establishing either a likelihood of success on the merits or that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor.

### D. Fourth Claim: Procedural Due Process

The plaintiffs claim that the enforcement of the statute against them did not provide them with timely notice and opportunity for a hearing or other review of the decision to seize and retain their dogs, and that constitutes a deprivation of property without due process.

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a

meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). In determining whether procedural due process requirements are met, courts consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

The availability of mechanisms for appeal or post-deprivation remedies precludes a later action for denial of procedural due process. See e.g. Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), where the court cited to Parratt v. Taylor for the proposition that "deprivations of property attributable to unauthorized conduct of state officials do not violate due process clause if state law provides adequate post-deprivation remedy". Parratt, 451 U.S. 527, 543-44 (1981). Here, in light of the testimony of the Commissioner about inter alia, the hearing process, the plaintiffs have not raised sufficiently serious questions as to whether state law provides an adequate post-deprivation remedy.

Thus the court concludes that the plaintiffs have not met their burden of establishing either a likelihood of success on

13

the merits or that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor.

**III. MOTION FOR CLASS CERTIFICATION**

The plaintiffs request that the court provisionally certify two classes:

> an FRCP23(b)(2) plaintiff class consisting of the owners of all dogs currently facing execution under a disposal order pursuant to the enforcement of CGS 22-358(c), along with such dogs which may hereinafter become subject to execution under such orders, and a defendant FRCP 23(b)(2) class consisting of the one hundred sixty-nine municipalities in the State of Connecticut authorized to order the execution of dogs pursuant to their enforcement of CGS §22-358.

(Doc. No. 150-1, pp. 9 and 10.)

Federal Rule of Civil Procedure 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> **(1)** the class is so numerous that joinder of all members is impracticable;
> **(2)** there are questions of law or fact common to the class;
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> **(4)** the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"The party seeking 'class certification must affirmatively demonstrate . . . compliance with the Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." In re American Intern. Group, Inc. Securities Litigation, 689

F.3d 229, 237 (2d Cir. 2012) (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)).

Here the plaintiffs have not met their burden of demonstrating that the requirements of commonality and typicality are satisfied. "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997) (citing Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982)). "The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." Id. (citing 3B Moore's Federal Practice & Procedure, ¶ 23.06-1 (1996)). Commonality requires that the "common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Callari v. Blackman Plumbing Supply, Inc., 307 F.R.D. 67, 75 (E.D.N.Y. 2015) (citing Wal-Mart Stores, Inc., 564 U.S. at 349). "Typicality, by contrast, requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's

liability.'" Id. (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)).

The plaintiffs contend that the plaintiffs and each class member are "literally interchangeable". (Doc. No. 150-1 at 14 ¶ 36.) The plaintiffs have not demonstrated that is so. The data submitted by the plaintiffs reflects that some of the dogs whose owners would be in the proposed class were seized as the result of biting when the complainant was on the premises of the owner or keeper and some were not, and for some the information is unknown. It is also unknown as to some whether the dogs were held after 14 days elapsed and whether a disposal order was issued. It appears that in some instances the owner and the Department of Agriculture engaged in mediation, and that in some instances the owner withdrew the appeal. Given these variations, the plaintiffs have not adequately addressed the question of whether plaintiffs would be subject to many case-specific defenses.

In light of the foregoing the court does not address Rule 23(a)(1) or (4) or Rule 23(b)(2).

**IV. CONCLUSION**

Accordingly, the plaintiff's motion for a preliminary injunction and provisional class certification (Doc. No. 150) is hereby DENIED.

It is so ordered.

Signed this 30th day of March 2018, at Hartford, Connecticut.

                                       /s/AWT
                                 ---------------------
                                   Alvin W. Thompson
                               United States District Judge